UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re ISLAND VIEW CROSSING II, L.P., | : | Chapter 11 |
| | : | |
| Debtor | : | Bky. No. 17-14454 |
| _____ | : | |
| | : | |
| KEVIN O'HALLORAN, in his capacity as | : | |
| Chapter 11 Trustee for | : | |
| ISLAND VIEW CROSSING II, L.P., et al., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| PRUDENTIAL SAVINGS BANK, | : | |
| | : | |
| Defendant | : | Adv.  No.  17-202 |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

This adversary proceeding was commenced by the filing of a Notice of Removal by Prudential Savings Bank ("Prudential").  Through the Notice, Prudential removed to this court an action pending in the Court of Common Pleas, Philadelphia County ("the C.P. Court").[1]  The removed action consists primarily of "lender liability" claims asserted by Island View Crossing II, L.P., the debtor in this chapter 11 case ("the Debtor"), but also includes certain claims against Prudential asserted by two non-debtors, Renato J. Gualtieri and Francesco Gualtieri and Prudential's counterclaims against those nondebtors.

---

[1]    28 U.S.C. §1452(a) authorizes the removal of actions to the district court.  Pursuant to 28 U.S.C. §157(a) and the district court's order of reference dated November 8, 1990, the district court in this district has referred to the bankruptcy court all cases and proceedings arising under, in, or related to a case under title 11 of the U.S. Code.

In this Memorandum, I will refer to the state court action, prior to its removal, as "the Lender Liability Lawsuit" and, after its removal to this court, as "the AP."

Presently before the court in the AP is the court's sua sponte consideration of the scope of its subject matter jurisdiction in this adversary proceeding and the potential remand to the C.P. Court of the claims between the non-debtor parties.  See 28 U.S.C. §1452(b) (authorizing the remand of removed claims).[2]

The parties were given both notice of the court's jurisdictional concerns by order dated November 13, 2018 and the opportunity to brief and argue the issue.  The parties' last memorandum was filed on January 10, 2019.

For the reasons stated below, I will:

1.  remand all claims filed by non-debtor parties against other non-debtors;

2.  dismiss without prejudice certain removed claims filed by and against the Debtor as duplicative of matters already asserted in this adversary proceeding or as more properly determined through the claims allowance process;

3.  deny the request for a stay of the remand order;

4.  deny, without prejudice, the requests for a stay of pending state court proceedings.

---

[2]      A federal court, as a court of limited jurisdiction, has an independent duty to assure itself of its jurisdiction over a case before reaching the merits. E.g., U.S. v. Weatherspoon, 696 F.3d 416, 421 (3d Cir. 2012); McIntyre v. Nationwide Mut. Fire Ins. Co., 2001 WL 893697, at *1 (E.D. Pa. Aug. 6, 2001); see also Thomas v. City of Philadelphia, 2019 WL 92735, at *1 (3d Cir. Jan. 3, 2019) (nonprecedential) ) ("it is axiomatic that federal courts must always assure themselves that they have subject matter jurisdiction, and that jurisdiction can be challenged at any time during the life of a case").

## II. PROCEDURAL HISTORY

To understand the jurisdictional issues presented, it is necessary to review the somewhat complicated procedural history that preceded the removal of the Lender Liability Lawsuit to the bankruptcy court.

The underlying litigation arises out of the pre-bankruptcy breakdown in the lender-borrower relationship between Prudential and the Debtor, an entity involved in real estate development. The parties' respective positions are conventional: Prudential asserts that the Debtor breached its repayment obligation as well as other duties under the loan documents, while the Debtor asserts that Prudential breached the implied duty of good faith or other contractual obligations, giving rise to "lender liability" claims.

For present purposes, it is sufficient to observe that the parties' dispute resulted in two (2) separate lawsuits in the C.P. Court that preceded the Debtor's bankruptcy filing.

### The Lava Lawsuit

The first of the two (2) relevant lawsuits was commenced by a different lender, Lava Funding, LLC ("Lava"), against the Debtor, the Debtor's principal Renato J. Gualtieri ("Renato"), Renato's father, Francesco Gualtieri ("Francesco"), and Prudential.[3] I will refer to this action as "the Lava Lawsuit."

The Lava Lawsuit seeks collection of a loan that Lava made to the Debtor. The loan was guaranteed by Renato and Francesco. Lava named Prudential as one of the defendants based on

---

[3]    On August 29, 2017, Francesco Gualtieri died. His claims have passed to his decedent's estate. For ease of reference, in the balance of this Memorandum, I will refer to Francesco Gaultieri and his decedent's estate interchangeably as "Francesco."

the theory that Lava made its loan to the Debtor in reliance on Prudential's promise to refinance

the loan. Lava alleged that Prudential breached that promise.

In the Lava Lawsuit, the Debtor, Renato, and Francesco filed a cross-claim against

Prudential, also asserting that Prudential reneged on its agreement to refinance the Lava loan.  In

response, Prudential filed a cross-claim against the Debtor, Renato, and Francesco.  I will refer to

the cross-claim of Renato and Francesco against Prudential and Prudential's cross-claim against

Renato and Francesco collectively as "the Non-Debtor Cross-claims."

In June 2016, Lava filed a praecipe to discontinue the Lava Lawsuit.

By an order entered in April 2017 (apparently sua sponte),  the C.P. Court "re-opened"

the Lava Lawsuit, but only as to Prudential's cross-claim (with no mention of the cross-claim that

the Debtor, Renato, and Francesco filed against Prudential). Then, in June 2017, the C.P. Court

entered an order consolidating the Lava Lawsuit (consisting at that point, presumably, only of

Prudential's cross-claim against the Debtor, Renato, and Francesco) with a second lawsuit, the

Lender Liability Lawsuit (that was later removed to this court).


### The Lender Liability Lawsuit

The Debtor and Renato commenced the Lender Liability Lawsuit against Prudential in

March 2016.  In this lawsuit, in response to the lender liability claims asserted by the plaintiffs,

Prudential filed nine (9) counterclaims,[4] some against both the Debtor and Renato and some

against Renato only.

On July 18, 2017, eighteen (18) days after the commencement of the Debtor's bankruptcy

---

[4]       Prudential amended its counterclaim twice. (Adv. No. 17-202, Doc. # 1, Ex. 13).

case, Prudential removed the Lender Liability Lawsuit (which had been consolidated with what

remained of the Lava Lawsuit) to this court, initiating the present AP.

After the removal, the AP was dormant for some time. Initially, the Debtor and

Prudential focused their efforts on litigating their competing motions in the main bankruptcy

case: the Debtor's Motion for Post-Petition Financing and Prudential's Motion to Convert Case

or Appoint a Trustee. That litigation resulted in the denial of the Debtor's request for debtor-in-

possession financing and the grant of Prudential's motion for appointment of a chapter 11 trustee

by order dated December 18, 2017.

Pursuant to the December 18, 2017 order, and after an election, on January 30, 2018, the

U.S. Trustee appointed Kevin O'Halloran ("the Trustee") as the chapter 11 trustee in this case.

After the appointment of the Trustee, all parties tacitly agreed that they would defer litigation in

the adversary proceeding while the Trustee and interested parties focused on other, more pressing

matters of case administration. Also, the special counsel retained by the Trustee to handle the

AP needed time to review the already lengthy record.

On November 13, 2018, I entered an order requesting that the parties in the AP submit

their respective suggestions for a pretrial management order. The order also alerted the parties to

the jurisdictional issue presently before the court.[5]

---

[5]      I note one (1) other procedural development in the AP. On December 6, 2018, by
agreement, the Trustee was substituted for the Debtor as named plaintiff in the AP.

### III.  BANKRUPTCY SUBJECT MATTER JURISDICTION

The main principles governing the scope of bankruptcy court subject matter jurisdiction

are well established.

> [B]ankruptcy subject matter jurisdiction is conferred by 28 U.S.C. § 1334(a) and
> (b) potentially extends to four (4) types of title 11 matters:
>
>> (1) cases under title 11;
>>
>> (2) proceedings arising under title 11;
>>
>> (3) proceedings arising in a case under title 11; and
>>
>> (4) proceedings related to a case under title 11.

In re Universal Mktg., Inc., 541 B.R. 259, 305 (Bankr. E.D. Pa. 2015) (citing In re Combustion

Eng'g, Inc., 391 F.3d 190, 225-26 (3d Cir. 2004)).

Assuming that subject matter jurisdiction exists, all bankruptcy matters, other than the

bankruptcy case itself, may be classified into two (2) categories:

> (1) core proceedings arising under title 11; and
>
> (2) non-core proceedings that are otherwise related to a case under title 11.

See 28 U.S.C. § 157(b), (c); In re Mullarkey, 536 F.3d 215, 221 (3d Cir. 2008).

The core/non-core distinction is significant because it determines the bankruptcy court's

level of decision making authority. See In re Seven Fields Dev. Corp., 505 F.3d 237, 254 (3d Cir.

2007).  The bankruptcy court has the statutory authority to determine all core matters.  See 11

U.S.C. §157(b)(1).  In a non-core proceeding, the bankruptcy court may not enter a final

judgment, but may only submit proposed findings of fact and conclusions of law to the district

court for de novo review, unless all parties agree that a final judgment may be entered by the

bankruptcy court. See 28 U.S.C. §157(c); see also Halper v. Halper, 164 F.3d 830, 836 (3d Cir.

1999).

Evaluating whether a proceeding is core or non-core should not be confused with the

primary question whether jurisdiction exists.  See In re Seven Fields Dev. Corp., 505 F.3d at 257

(citing In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266 (3d Cir.1991)).  Nevertheless,

consideration of the core/non-core distinction provides guidance in analyzing the existence of

subject matter jurisdiction itself.

The concept of a core proceeding is "anchored in" two (2) of the jurisdictional grounds

stated in 28 U.S.C. §1334(b): those "that 'arise under' and those that 'arise in' the bankruptcy

case." Universal Mktg., 541 B.R. at 306. As one court explained:

> Core proceedings represent those disputes that are so intertwined with the
> bankruptcy process that Congress has the power, under Article I of the
> Constitution, to direct a non-tenured judicial officer (i.e., bankruptcy judge) to
> render a final determination of their merits.

In re Porter, 295 B.R. 529, 535 (Bankr. E.D. Pa. 2003).

To determine whether a proceeding is core, the court must consult 28 U.S.C. §157(b),

which sets forth an illustrative list of core proceedings,[6] and evaluate whether the proceeding

involves claims that invoke a substantive right provided by the Bankruptcy Code or claims that

could arise only in the context of a bankruptcy.  Halper, 164 F.3d at 836.

On the other hand, "[n]on-core proceedings include the broader universe of all

---

[6]    In 2011, the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011),
created a third category of matters in the universe of categories governing the division of authority
between the district court and the bankruptcy court. In Stern, the Supreme Court held that Article III of
the U.S. Constitution prohibits bankruptcy courts from issuing final orders in certain matters Congress
classified as core in 28 U.S.C. §157(b). Such claims (commonly referred to as "Stern" claims) are now
treated in most, if not all, respects as non-core. See Wellness Int'l Network Ltd. v. Sharif, 135 S.Ct. 1932
(2015).

-7-

proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Id. at 837.

The iconic test for determining whether a matter is sufficiently "related to" the bankruptcy case to create subject matter jurisdiction is:

> whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original) (citations omitted), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).

Under Pacor, most questions involving the scope of the court's non-core ("related to") jurisdiction are determined by focusing on the effect, if any, that resolution of the dispute may have on the bankruptcy estate. "Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid." In re Shuman, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) ("bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor"). One court has observed that, typically, litigation between non-debtors may affect the bankruptcy estate if the litigation could potentially:

1. Increase or decrease the amount of claims against the estate; or

2. Decrease the value of property of the estate.

See Meritage Homes Corp. v. JPMorgan Chase Bank, N.A., 474 B.R. 526, 559 (Bankr. S.D.

Ohio 2012).

However,

> [s]hared facts between the third-party action and a debtor-creditor conflict do not
> in and of themselves suffice to make the third-party action 'related to' the
> bankruptcy. Moreover, judicial economy alone cannot justify a court's finding
> jurisdiction over an otherwise unrelated suit.

In re Found. for New Era Philanthropy, 201 B.R. 382, 391 (Bankr. E.D. Pa. 1996) (quoting

Matter of Zale Corp., 62 F.3d 746, 753-54 (5th Cir. 1995)).


## IV.  DISCUSSION

A plethora of claims, crossclaims, and counter-claims have been brought to this court

through the removal of the Lender Liability Lawsuit (which was consolidated with the Lava

Litigation, another state court, pre-bankruptcy matter).

I conclude that the bankruptcy court lacks jurisdiction over all the non-debtor claims

asserted against other non-debtors.[7]

---

[7]    While perhaps it goes without saying, I note that the court has jurisdiction over the
removed claims asserted by the Debtor against Prudential in the Lender Liability Lawsuit.

The bankruptcy estate's primary asset is a tract of real property, partially developed by
the Debtor pre-petition as a residential community.   Prudential holds a substantial secured claim against
this asset. The Trustee intends further to develop the property, hoping to earn a handsome profit for the
bankruptcy estate, which would benefit all of the Debtor's creditors.

The Debtor was the party-plaintiff in the removed state court action, (now replaced as
plaintiff in the AP by the Trustee).  If the bankruptcy estate is successful in the litigation, the likely result
is a reduction of Prudential's secured claim.  This carries the potential for increasing the distribution to
other creditors.  This easily satisfies the Pacor standard of "conceivably" affecting the administration of
the bankruptcy estate.

## A.  The Court Lacks Jurisdiction Over Renato's Claim Against Prudential Asserted in the Lender Liability Lawsuit

The first jurisdictional issue involves Renato's claim against Prudential, filed in the

Lender Liability Lawsuit.  Under the <u>Pacor</u> test, the question is whether the determination of

Renato's claim against Prudential could have any effect on bankruptcy administration.

The Trustee (alone among the parties) argues that this court has jurisdiction to adjudicate

the claims of Renato against Prudential.  As the party invoking the jurisdiction of the court, the

Trustee has the burden of establishing the existence of jurisdiction.  <u>See, e.g.</u>, <u>Nuveen Mun. Tr.

ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.</u>, 692 F.3d 283, 293

(3d Cir. 2012); <u>In re Berks Behavioral Health, LLC</u>, 464 B.R. 684, 688 (Bankr. E.D. Pa. 2012).

The basis of the Trustee's assertion that subject matter jurisdiction exists is articulated in

two (2) sentences in his supporting memorandum:

> Gualtieri's status as a guarantor could conceivably effect the size, obligations, and
> rights of the Debtor. Moreover, adjudication of Gualtieri's claims in a forum other
> than the Bankruptcy Court could conceivably have a collateral estoppel effect on
> the claims and rights of the Debtor in this action, as well as on the administration
> of the bankruptcy estate.

(Trustee's Memorandum at 2) (footnote omitted) (Adv. No. 17-202, Doc. # 10).

Respectfully, I disagree.

### 1.

Initially, I fail to see how Renato's status as a guarantor of the Prudential loans matters

when evaluating Renato's claims against Prudential.  In the AP, Renato asserts an **<u>affirmative</u>**

**<u>claim</u>** against Prudential for whatever damages he can prove that he personally suffered as a

result Prudential's alleged misconduct.  If he succeeds in the litigation, he may recover money from Prudential or, perhaps, reduce his liability as guarantor of Prudential's claim against the bankruptcy estate.  Either way, the rights of the bankruptcy estate against Prudential are unaffected by the outcome of Renato's dispute with Prudential.

Even if the Renato-Prudential portion of the litigation merely resulted in a reduction of Renato's liability as a guarantor and was then followed by Renato's payment to Prudential in partial or total satisfaction of the remaining liability, the impact on the bankruptcy estate would likely be de minimus.

As my former colleague Judge Fox observed, if a guarantor pays on a guarantee of a claim held by a creditor against the bankruptcy estate, the payment will reduce the creditor's claim against the estate; however, the guarantor typically is subrogated to the rights of the creditor.  The net effect on the claims against the estate is therefore neutral; the only change is the substitution of one (1) creditor for another. New Era, 201 B.R. at 394–95.[8]

That said, I recognize that New Era was a chapter 7 case in which the identity of the claimants may be less relevant than in a chapter 11 case in which the goal of the trustee (or debtor-in-possession) is to obtain confirmation of a plan based on the acceptance of impaired classes entitled to vote.  In the chapter 11 context, the identity of the creditor may matter in connection with plan voting.  Thus, there may be chapter 11 cases in which the creditor's identity matters enough to justify the exercise of "related to" jurisdiction with regard to an action between a creditor and guarantor.

---

[8]     There are reported decisions to the contrary. E.g., In re New 118th LLC, 396 B.R. 885, 890–91 (Bankr. S.D.N.Y. 2008).

At first blush, one might think that the substitution of Renato (the principal of the Debtor who, following the appointment of the chapter 11 trustee, lost control of the Debtor) as creditor in lieu of Prudential (the "hostile" creditor who pressed for the appointment of a trustee) might better facilitate confirmation of a chapter 11 plan.  However, as counterintuitive as it may be, in the circumstances presented here, I doubt that the substitution of Renato for Prudential would be material. Even though Prudential is a defendant in the AP, it nonetheless is working cooperatively with the Trustee to develop the Debtor's real estate project; the success of that project is in the in the interest of all parties.  I fail to see, and the Trustee has not articulated, how the substitution of Renato for Prudential as a creditor would likely impact case administration in any tangible way.

## 2.

The Trustee's concerns about the potential application of collateral estoppel have more force.  But, in the end, this argument, too, is unpersuasive.

Presumably, the Trustee foresees the following (from his perspective, nightmare) scenario: the bankruptcy court remands Renato's claim against Prudential; Renato litigates his claims in state court more quickly than the Trustee litigates his claims against Prudential in this court;[9]  Renato loses in state court; Prudential then asserts in this court that the state court's factual findings or mixed fact-law determinations, (which, in this hypothetical, were adverse to

---

[9]      This premise is contrary to the conventional wisdom that litigation proceeds more quickly in federal than in state court.

Renato and favorable to Prudential), preclude the Trustee from litigating those matters in the

bankruptcy court on behalf of the Debtor.

Pacor, the seminal case on "related to" jurisdiction, discussed this very issue.

In Pacor, an asbestos defendant (Pacor) removed an action to federal court on the ground

that it was related to the pending Johns-Manville bankruptcy case.  Pacor theorized that if the

asbestos plaintiff prevailed, Pacor could assert an indemnity claim against the Johns-Manville

estate.  The Third Circuit rejected this argument, stating:

> Our examination of the Higgins-Pacor-Manville controversy leads us to conclude
> that the primary action between Higgins and Pacor would have no effect on the
> Manville bankruptcy estate, and therefore is not "related to" [the Manville]
> bankruptcy within the meaning of section 1471(b).[10] At best, it is a mere precursor
> to the potential third party claim for indemnification by Pacor against Manville.
> Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in
> that it could not determine any rights, liabilities, or course of action of the debtor.
> **Since Manville is not a party to the Higgins-Pacor action, it could not be
> bound by res judicata or collateral estoppel**.

Pacor, 743 F.2d at 995 (emphasis added) (citations omitted).

This passage in Pacor states the limitation on the application of collateral estoppel in

absolute terms and is probably overbroad.  In the application of the doctrine of collateral

estoppel, there are some exceptions to the "identity of parties" requirement referred to by the

Pacor court.[11]  Indeed, some courts have found "related to" jurisdiction based on a concern that

---

[10]        The reference to §1471(b) is to 28 U.S.C. §1471(b) (repealed).  28 U.S.C. §1334(b) now
grants the district court authority to hear matters "related to" a bankruptcy case and 28 U.S.C. §157(a)
authorizes the district court to refer those matter to the bankruptcy court.

[11]        The application of issue preclusion in a federal court action based on a prior state court
judgment typically is grounded in the federal full faith and credit statute, 28 U.S.C. §1738, which
provides that state judicial proceedings "shall have the same full faith and credit in every court within the
(continued...)

the close relationship between the state court litigant and the bankruptcy debtor may result in the application of collateral estoppel in a manner that could have a meaningful impact on bankruptcy administration.  See, e.g., In re CHC Group Ltd., 2017 WL 1380514, at *6 (Bankr. N.D. Tex. Mar. 28, 2017); In re Frascella Enterprises, Inc., 349 B.R. 421, 434 (Bankr. E.D. Pa. 2006).

       In this case, I perceive any risk of prejudice to the bankruptcy estate via application of collateral estoppel after the remand of Renato's claim against Prudential to be too remote to justify the exercise of bankruptcy jurisdiction over Renato's claim.

       In Taylor v. Sturgell, 553 U.S. 880, 893 (2008), the Supreme Court recognized six

---

[11](...continued)
United States ... as they have by law or usage in the courts of such State ... from which they are taken." Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. §1738). Thus, in determining whether the doctrine bars relitigation of an issue previously determined by a state court, a federal court must apply state law and evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place. Swineford v. Snyder County PA, 15 F.3d 1258, 1266 (3d Cir. 1994) ("Federal courts must give a state court judgment the same preclusive effect as would the courts of that state").

              Under Pennsylvania law, in order for issue preclusion to apply, four (4) elements must be satisfied:

                     1. the issue is identical to one that was presented in a prior case;

                     2. there has been a final judgment on the merits of the issue in the prior case;

                     3. **the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action**; and

                     4. the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and.

                     5. the determination in the prior proceeding was essential to the judgment.

E.g., Dici v. Com. of Pa., 91 F.3d 542, 548 (3d Cir. 1996); Cohen v. Workers' Comp. Appeal Bd. (City of Philadelphia), 909 A.2d 1261, 1264 (Pa. 2006); Rue v. K–Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

categories of non-party relationships that serve as exceptions to the general rule that "one is not

bound by a judgment *in personam* in a litigation in which he is not designated as a party or to

which he has not been made a party by service of process." (quoting Hansberry v. Lee, 311 U.S.

32, 40 (1940)).[12]   The six categories are:

> 1. the nonparty agrees to be bound by a prior judicial determination between other parties;
>
> 2. a substantive legal relationship exists that binds the nonparty;
>
> 3. the nonparty was adequately represented in the prior litigation by someone with the same interests who was a party;
>
> 4. the nonparty assumed control of the prior litigation;
>
> 5. the nonparty is the proxy or agent of a party to the prior litigation;
>
> 6. A special statutory scheme expressly forecloses subsequent litigation by the nonparty.

Id. at 893-895.

While my analysis requires that I make a prediction based on events that have not

occurred,[13] I fail to perceive how any of the exceptions to the "same party" requirement for the

application of collateral estoppel pose a meaningful risk of prejudicing the bankruptcy estate.

Here, the only potential applicable exceptions to the "same party" requirement for

collateral estoppel are the second and third categories above.   The second category encompasses

---

[12]    Taylor involved applicability of the doctrine of collateral estoppel to an issue determined in a prior federal proceeding and applied principles of federal common law, not Pennsylvania law. Nevertheless, collateral estoppel principles under federal common law and Pennsylvania law are congruent, making the analysis in Taylor helpful in analyzing Pennsylvania collateral estoppel law.

[13]    Courts usually make collateral estoppel determinations in a second action after a prior action has been litigated to conclusion.  Here, the Lender Liability Lawsuit has not been decided.

what courts traditionally have referred to as "privity."[14]  Privity refers to a "mutual or successive

relationship to the same right of property, or such an identification of interest of one person with

another as to represent the same legal right."  <u>Greenway Ctr. Inc. v. Essex Ins. Co.</u>, 475 F.3d 139,

149 (3d Cir. 2007) (quoting <u>Ammon v. McCloskey</u>, 655 A.2d 549, 554 (Pa. Super. 1995)

(quoting Black's Law Dictionary (5th ed. 1979))).  The third exception, with its requirement of

adequate representation of the non-party by a party "with the same interests" as the non-party

appears to overlap the second exception, at least to some degree.

　　　　Given the current posture of the bankruptcy case and the removed litigation, Renato lacks

a sufficient identification of interest with the bankruptcy estate to create a material risk that the

outcome of his litigation against Prudential will bind the bankruptcy estate.  He no longer

controls the Debtor or the estate assets.  Renato is simply another party standing in line for

payment if the Trustee is successful in raising an estate sufficient to make a distribution to

unsecured creditors and equity.  While it is true that the interests of Renato and the Trustee are

aligned, insofar as they agree that Prudential should be held liable for lender misconduct, that, by

itself, is insufficient to raise a meaningful specter of prejudice to the bankruptcy estate.  "The

Supreme Court has cautioned that an alignment of interests, by itself, is not enough to warrant

the application of collateral estoppel to a nonparty to the prior litigation." <u>In re Irwin</u>, 457 B.R.

413, 423 (Bankr. E.D. Pa. 2011) (citing <u>Taylor</u>, 553 U.S. at 900).

　　　　Because the resolution of Renato's claims against Prudential will, in all likelihood, have

---

[14]　　　The existence of "privity" is usually articulated as an alternative element of the test for
preclusion, rather than exception to the requirement that the parties in the two actions be identical.  For
present purposes, it does not matter whether "privity" is conceptualized as an element of the test for
collateral estoppel or an exception to the "identity of parties" requirement.

no effect on this case, the bankruptcy court lacks jurisdiction over Renato's claims against

Prudential.  Under 28 U.S.C. §1452(b), the lack of jurisdiction requires remand of his claims to

the C.P. Court.  See, e.g., In re Midgard Corp., 204 B.R. 764, 772–73 (B.A.P. 10th Cir. 1997).

### B.  The Court Lacks Jurisdiction Over Prudential's Counterclaims Asserted in the Lender Liability Lawsuit

In the Lender Liability Lawsuit, Prudential filed nine (9) counterclaims against Renato,

Island View Crossing II, L.P., and Island View Properties, Inc.[15]  The claims fall into three (3)

---

[15]    The counterclaims are based on the following transactions:

1.  June 21, 2010 Prudential Loan Agreement Involving Durham Manor, LLC and Renato J. Gualtieri

2.  November 26, 2014 Prudential Loan Agreement Involving Island View Crossing II, L.P., Island View Properties, Inc., and Renato J. Gualtieri

3.  November 26, 2014, Prudential entered into a Development Construction Loan Agreement with the Debtor and Renato

4.  November 20, 2008 Prudential Loan Agreement Involving Steeple Run, L.P. and Renato J. Gualtieri

5.  November 20, 2008 Loan Agreement Issued by Prudential to Renato J. Gualtieri

6.  June 12, 2007 Loan Agreement Issued by Prudential to One State Street Associates, L.P. and Renato J. Gualtieri ($750,000 Loan)

7.  June 12, 2007 Loan Agreement Issued by Prudential to One State Street Associates, L.P., Fidelity Properties, Inc., and Renato J. Gualtieri ($792,000 Loan)

8.  September 20, 2013 Prudential Loan Agreement Involving Island View Crossing II, L.P., Island View Properties, Inc., Renato J. Gualtieri

9.  December 1, 2014 Prudential Loan Agreement involving Island View Crossing II, L.P., Francesco Gualtieri, and Renato J. Gualtieri (based on the Lava loan).

categories:

> (1) a loan made directly to Renato (Counterclaim No. 5);
>
> (2) loans made to non-debtor entities, guaranteed by Renato, but not guaranteed by the Debtor (Counterclaims Nos. 1, 4, 6, 7).
>
> (3) loans made to the Debtor, guaranteed by Renato (Counterclaims Nos. 2, 3, 8, and 9).

There is no reason to believe that Prudential's effort to collect on a personal loan it made to the Debtor's principal or on Renato's personal guarantee of an obligation for which the Debtor is not liable will have an impact on this bankruptcy case. Therefore, I will remand Counterclaims Nos. 1, 4, 5, 6 and 7.

The other category involves loans made to the Debtor which were guaranteed by Renato. Thus, Prudential's view is that both Renato and the Debtor are liable on these debts. If Renato is held liable on any of these guarantees and makes a payment to Prudential, the payment likely will give rise to a subrogation claim in Renato's favor against the bankruptcy estate. This is similar to the situation discussed in Part IV.A.1, supra; while the identity of the creditor changes, the end result regarding the liability of the bankruptcy estate does not. For the reasons expressed earlier, I conclude that the parties have not met their burden of establishing that Prudential's collection efforts against Renato as a co-obligor of the bankruptcy estate may sufficiently impact this bankruptcy case as to support the exercise of bankruptcy jurisdiction.

Consequently, all of the Prudential counterclaims in the Lender Liability Lawsuit will be remanded to the C.P. Court.

### C.  The Court Lacks Jurisdiction Over the Non-Debtor Cross-Claims Asserted in the Lava Lawsuit

### 1. applicable Pennsylvania law

Determining the proper disposition of the cross-claim or cross-claims that arrived in this court due to the consolidation of the Lava Lawsuit with the Lender Liability Lawsuit is made more difficult by the less than unusal orders of the C.P. Court.  To evaluate the proper status of the cross-claims, it is helpful to return to first principles.

Pa. R. Civ. P. 1031.1 authorizes a party to file a cross-claim in any answer or reply authorized to be filed by Pa. R. Civ. P. 1017(a).  Rule 1031.1 states that a cross claim is

> a cause of action against any other party to the action [asserting] that the other party may be
>
> (1)  solely liable on the underlying cause of action; or
>
> (2)  liable to or with the cross-claimant on any cause of action arising out of the transaction or occurrence upon which the underlying cause of action is based.[16]

Thus, Rule 1031.1 authorizes the filing of cross-claims in three (3) circumstances:

> (1)  a defendant asserts that the cross-claim-defendant is solely liable to the plaintiff;
>
> (2)  a defendant asserts that the cross-claim-defendant is liable over to the defendant if the defendant is liable to the plaintiff;

---

[16]     Rule 1031.1 was adopted in 2007. The Explanatory Comment to the Rule states that it was adopted to clarify that cross-claims may be asserted "as a matter of pleading," rather than through the more cumbersome procedure of joinder of additional defendants under Rule 2252.  The Explanatory Comment also points out that the claims which may be asserted by cross-claim are "identical" to those which are the basis for joining an additional defendant under Rule 2252(a).

The text of Rule 2252(a) is the same as Rule 1031.1(1) and (2), except that Rule 2252(a) includes the additional phrase "or series of transactions or occurrences."

(3) a defendant has an affirmative claim against the cross-claim defendant that
arises out of the same transaction or occurrence as the plaintiff's claim.

If a plaintiff discontinues its claim against a defendant (and by extension, against the
cross-claim defendants), the grounds for the cross-claim in the first category above are moot.
However, if the discontinuance is based on a settlement in which the defendant paid or agreed to
make a payment to the plaintiff, the defendant may wish to proceed on the cross-claim based on
the "liable over" second category.  The third category appears to authorize the filing of a cross-
claim that is not dependent on the existence of liability to the plaintiff, as long as the defendant's
claim against the cross-claim-defendant arises out of the same transaction or occurrence as the
plaintiff's claim.  See Stokes v. Loyal Order of Moose Lodge No. 696, 466 A.2d 1341, 1343 (Pa.
1983); 3 Standard Pennsylvania Practice 2d §14:237 (West 2019).

In light of the potential need to continue to adjudicate a cross-claim, it is therefore not
surprising that the Pennsylvania Superior Court has held that a plaintiff's discontinuance of an
action does not affect the right of a defendant to continue to prosecute a cross-claim against
another defendant.  See Ross v. Tomlin, 696 A.2d 230, 231-32 (Pa. Super. Ct. 1997).[17]

With these principles in mind, I consider the cross-claims filed in the Lava Lawsuit.

---

[17]     Ross v. Tomlin involved a discontinuance of an action by the plaintiff after the joinder of
an additional defendant pursuant to Pa. R. Civ. P. 2252.  For the reasons explained above, its holding
necessarily applies to cross-claims under Rule 1031.1.

## 2.  Prudential's cross-claim against Renato and Francesco will be remanded
### to the C.P. Court for lack of jurisdiction

In the Lava Lawsuit, Prudential named Renato, Francesco, and the Debtor as cross-claim

defendants.[18]

In substance, Prudential's cross-claim against Renato and Francesco falls into the first

and second categories of cross-claims described above in Part IV.C.1, supra.  Essentially,

Prudential asserts that Renato and Francesco are solely liable to Lava and that, if Prudential were

found liable to Lava, Renato and Francesco were liable over to Prudential.[19]

Before the Lender Liability Lawsuit was removed to this court, this cross-claim

apparently was : (a) terminated by the discontinuance of the Lava Lawsuit; (b) revived by the

C.P. Court, after it "reopened" the discontinued Lava Lawsuit as to Prudential's cross-claim; and

(c) consolidated with the Lender Liability Lawsuit.

I will assume that the representation made by Renato and Francesco in their submission

to the court is correct: that Lava discontinued the Lava Lawsuit based on a settlement it reached

with Prudential.[20]  I will further assume that Prudential paid Lava a sum of money as part of the

settlement.  Thus, through the cross-claim, Prudential seeks repayment from the Debtor, Renato,

---

[18]    I will address Prudential's cross-claim against the Debtor in n.23, infra,.

[19]    Nothing in Prudential's cross-claim suggests that it was asserting a separate, affirmative
claim against the Debtor, Renato, and Francesco arising from the transaction which precipitated the Lava
Lawsuit.

[20]    No party disputes the representation.

-21-

and Francesco of the money it paid to Lava.[21]

Presently, Prudential has not filed a claim against the bankruptcy estate for any amount that it paid to Lava.[22]  The deadline for filing claims expired on October 11, 2017.   However, even if Prudential somehow is able to look to the bankruptcy estate for recompense, its effort to collect from Renato and Francesco will have no effect on the bankruptcy estate.

Once again, I find the reasoning of New Era applicable.  If Prudential establishes the bankruptcy estate's, Renato's and Francesco's liability for the money Prudential paid Lava and, more importantly, if Prudential successfully collects from Renato and/or  Francesco, the bankruptcy estate's liability to Prudential will be reduced.  But given the distinct possibility that Renato and/or Francesco would substitute in for Prudential as a creditor of the bankruptcy estate to the extent of the payment made to Prudential, there may be no net effect on the bankruptcy estate, other than a change in the identity of a creditor.  See Part IV.A.1, supra.

As the party invoking the jurisdiction of the court with respect to this claim, Prudential has the burden of demonstrating why its claims against Renato and Francesco could affect the bankruptcy estate. That burden has not been met.  Therefore, the court lacks jurisdiction over Prudential's cross-claim against Renato and Francesco, requiring remand of those claims to the C.P. Court.[23]

---

[21]      This might explain why the C.P. Court "re-opened" the Lava Lawsuit with regard to Prudential's cross-claim only.

[22]      Prudential has filed two (2) proofs of claim: Claims Nos. 23 and 24.  Neither claim references Lava.

[23]      Prudential's cross-claim against the Debtor stands on different footing.  The imposition
(continued...)

### 3.  Renato's and Francesco's cross-claim against Prudential
### will be remanded to the C.P. Court for lack of jurisdiction

In the Lava Lawsuit, Renato and Francesco were not just cross-claim defendants, but also

cross-claim plaintiffs (along with the Debtor).  They asserted a cross-claim against Prudential as

part of their joint Answer, New Matter and Cross-Claim, filed in response to Lava's Complaint.

Like Prudential's cross-claim, this cross-claim is based on only the first two (2) categories

of permissible cross-claims: Renato and Francesco assert that Prudential is solely liable to Lava,

jointly liable with them to Lava or liable over to them with respect to Lava's claim.  Again,

nothing in this cross-claim references an affirmative claim against Prudential arising out of the

Lava loan transaction (i.e., what I have labeled as the third category of cross-claims).

As stated earlier, it is unclear how the C.P. Court's orders affected Renato and

Francesco's cross-claim.  Perhaps the claim was dismissed when Lava discontinued the Lava

Lawsuit and was not revived when that action was re-opened only with regard to Prudential's

---

[23](...continued)
of liability against the Debtor has an obvious effect on the bankruptcy estate.  This cross-claim, however,
suffers from a different, non-jurisdictional, defect.

       Generally, the assertion of a claim in an adversary proceeding is procedurally improper
because it bypasses the claims allowance process.  Claims against the bankruptcy estate are made by
filing a proof of claim.

       If Prudential files a proof of claim based on the liability asserted in its cross-claim
against the Debtor, but see 11 U.S.C. §502(b)(9), an objection to Prudential's claims could be
consolidated with trial of this adversary proceeding, if the claim is not disallowed as untimely.

       In short, there is no reason for this cross-claim to be litigated outside the claims
allowance process.  Therefore, I will dismiss the cross-claim without prejudice to Prudential's right to
file a proof of claim.

cross-claim.  But, none of this is certain.[24]

Renato and Francesco express concern about the limbo status of their Lava Lawsuit cross-claim against Prudential.  If both the cross-claims were dismissed through the "closing" of the Lava Lawsuit after Lava discontinued its action, on the strength of <u>Ross v. Tomlin</u>, Renato and Francesco assert that the dismissal was erroneous.

In any event, neither Renato, Francesco, nor Prudential asserts that the bankruptcy court has jurisdiction over their cross-claim against Prudential.  As the party that removed the Lender Liability Lawsuit to this court, Prudential has the burden of demonstrating that this court has jurisdiction, <u>i.e.</u>, that the resolution of those cross-claims could have some impact on the bankruptcy estate.  Prudential does not assert that such jurisdiction exists.  Renato and Francesco have not even attempted to show that their cross-claim may affect the bankruptcy estate.  Thus, the disposition of the Renato and Francesco cross-claim can be made on the simple basis that no party has presented grounds for the exercise of bankruptcy court jurisdiction, thus requiring that

---

[24]     The Trustee, as successor to the Debtor's interest in the matter, expresses no concern regarding the ambiguous fate of the Debtor's cross-claim.

The Trustee's lack of interest is not surprising. The Trustee is already prosecuting two (2) separate adversary proceedings against Prudential.  The Debtor's complaint in the Lender Liability Lawsuit (now the instant AP controlled by the Trustee) includes claims regarding Prudential's alleged misconduct with respect to the Lava loan transaction.  Thus, if the C.P. Court effectively dismissed the Debtor's cross-claim against Prudential in the Lava Lawsuit without reaching the merits, the Trustee appears confident that he can press those claims in the AP.

For the sake of clarity, I will dismiss the Debtor's cross-claim in the Lava Lawsuit as duplicative of the claims already asserted in the complaint in the AP.

the cross-claim, to the extent that it remains viable, be remanded to the C.P. Court.[25]

### D.  The Requests for Stays of the Remanded Matters Are Denied Without Prejudice

In his submission to the court, the Trustee asserts that if this court remands non-debtor

claims against Prudential, the court should stay the remanded proceedings until conclusion of the

AP, in order to make sure that the Trustee suffers no prejudice through the application of

collateral estoppel.[26]

---

[25]    Renato and Francesco urge this court to determine whether the removed Lender Liability
Lawsuit includes the cross-claim of Renato and Francesco which was "closed" before the Lava Lawsuit
was consolidated with the Lender Liability Lawsuit.  I decline to do so because it does not matter.  If the
cross-claim never left the C.P. Court because it was dismissed before removal, the claim remains in the
C.P. Court as dismissed (or "closed").  If the cross-claim migrated to the bankruptcy court in some
inchoate fashion, it will be remanded by the order accompanying this memorandum. Either way, any
further litigation regarding the status of the cross-claim must take place in the C.P. Court.

I add one (1) other thought.  It is hard to discern why Renato and Francesco are
concerned about their cross-claim.  The cross-claim raises no independent cause of action against
Prudential arising out of the Lava loan transaction.  The cross-claim asserts only that Prudential is solely
liable or liable over to Renato and Francesco.  Yet, Renato and Francesco have represented that
Prudential made the payment to Lava that induced Lava to discontinue its lawsuit.  I infer that neither
Renato nor Francesco made any payment to Lava.  If those are the facts, then the cross-claim against
Prudential is moot because Lava is no longer prosecuting any pending action against Renato and
Francesco that might cause them to pay Lava on account of a claim for which they believe Prudential is
solely liable or liable over to them.

[26]    Alternatively, the Trustee suggests that the court could: (1) stay its remand order until
the conclusion of the AP; or (2) declare that collateral estoppel will not be applied in the adjudication of
this AP.

While there may be circumstances in which a brief stay of a remand order due to the
court's lack of jurisdiction may be appropriate, this is not such a case. Further, based on the pretrial
management order requested by the parties and agreed to by the court, this AP is not likely to go to trial
until some time in 2020.  That is far too long for this court to retain control of claims over which it lacks
jurisdiction.

(continued...)

-25-

For different reasons, Renato and Francesco also request that the court stay all remanded claims.  Renato and Francesco point out that there are two (2) related lawsuits pending in the C.P. Court, other than the Lender Liability Lawsuit.  They refer to two (2) mortgage foreclosure actions that Prudential filed against Francesco, in which Francesco asserts a counterclaim that is comparable to the cross-claim Francesco asserted in the Lava Lawsuit.

Renato and Francesco request the stay in order to prevent what they characterize as duplicative and costly litigation, with the potential for inconsistent determinations by different courts adjudicating the same set of operative facts.  (It is not clear whether a stay of Prudential's foreclosure action against Francesco is part of this request).

In effect, the Trustee, Renato, and Francesco request a third party injunction under 11 U.S.C. §105, in which the bankruptcy court enjoins a non-debtor from prosecuting a claim against another non-debtor.  See, e.g., McCartney v. Integra Nat'l. Bank North, 106 F.3d 506, 510 (3d Cir. 1997); In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 378 (Bankr. E.D. Pa. 2009); In re Philadelphia Newspapers LLC, 410 B.R. 404, 412 (Bankr. E.D. Pa. 2009), aff'd 423 B.R. 98 (E.D. Pa. 2010); In re Monroe Well Serv., Inc., 67 B.R. 746, 751–52 (Bankr. E.D. Pa. 1986).

The party subject to the injunction would be Prudential.  At the hearing in this matter, Prudential did not consent to such a stay of the state court proceedings.

A request for a third party injunction requires a more detailed procedural path than what has occurred here: a sua sponte consideration of the court's subject matter  jurisdiction.  See Fed.

---

[26](...continued)
     As for the collateral estoppel request, I consider that request to be either not ripe or a request for an advisory opinion.  Either way, I decline to grant the relief.

R. Bankr. P. 7001, 7065.

I will not entertain the entry of the type of injunction requested by the Trustee, Renato, and Francesco without compliance with the rules governing the issuance of injunctions. Therefore, I will deny their request.  The denial is on procedural grounds and is without prejudice.

## V.  CONCLUSION

Because Prudential and the Trustee have failed to make a colorable argument that the non-debtor state cross-claims and counterclaims in the Lender Liability Lawsuit and the Lava Lawsuit have a plausible effect on the bankruptcy case, I find that there is no "related to" jurisdiction and these matters must be remanded to the state court. Cross-claims by and against the Debtor in the Lava Lawsuit are duplicative of litigation pending here and will therefore be dismissed. I also decline to grant the additional stay and injunctive relief sought by the Trustee and Prudential.

An order consistent with this Memorandum will be entered.

Date:  March 7, 2019      _____
                          **ERIC L. FRANK**
                          **U.S. BANKRUPTCY JUDGE**